UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

VALARIE MORRISON,           )
          Plaintiff         )
                            )
          v.                )    C.A. No. 11-cv-30156-MAP
                            )
MICHAEL J. ASTRUE,          )
Commissioner, Social        )
Security Administration,    )
          Defendant         )


MEMORANDUM AND ORDER REGARDING
PLAINTIFF'S MOTION TO REMAND AND DEFENDANT'S MOTION FOR
ORDER AFFIRMING THE DECISION OF THE COMMISSIONER
(Dkt. Nos. 11 & 13)

August 13, 2012

PONSOR, U.S.D.J.


I. INTRODUCTION

This action seeks review of a final decision of the
Commissioner of Social Security ("Commissioner") denying
Plaintiff's applications for Social Security disability
insurance benefits.  Plaintiff applied for disability
benefits on November 5, 2008, alleging disability since
December 28, 2004 due to back disorders and fibromyalgia.
After a hearing on December 8, 2010, the Administrative Law
Judge ("ALJ") found that Plaintiff was not disabled and

denied Plaintiff's claim.  (A.R. 15-27.)  The Decision
Review Board did not complete its review of the ALJ's
decision within ninety days, thereby making the decision
final.  Plaintiff filed this complaint on June 7, 2011.

Plaintiff now moves to remand the case to the
Commissioner for reconsideration (Dkt. No. 11), and
Defendant moves for an order affirming the decision of the
Commissioner (Dkt. No. 13).  For the reasons stated below,
Plaintiff's motion will be allowed, and Defendant's motion
will be denied.

II. <u>FACTS</u>

At the time of the ALJ's decision, Plaintiff was fifty-
three years old.  She had graduated from high school,
completed one year of college, and previously worked as a
sales/business manager, loan officer and finance manager,
and realtor.  (A.R. 242-52.)

A.   <u>Physical Conditions</u>.

Plaintiff underwent a partial diskectomy surgery in
2003.  (A.R. 584.)  On December 23, 2004, she injured her
back again in a car accident.  (A.R. 367-78.)  In January
2005, Plaintiff visited Dr. Theodore Jacobs, who noted that

the accident resulted in soft-tissue injury and strain, but believed that it did not aggravate her back condition. (A.R. 387.)  The following month, an MRI revealed status-post L5-S1 laminectomy on the right of the lumbar spine, moderate disc degeneration at L5-S1, and slight retrolisthesis of L5-S1.  A March 2005 medical record revealed that Plaintiff had possible lumbosacral radiculitis, lumbar disc displacement, left, lower extremity pain, back pain, facet joint pain, sacroiliac joint pain, and myogascial pain.  (A.R. 399.)  On Dr. Jacobs' recommendation, Plaintiff received a series of epidural injections from March 29, 2005 until May 24, 2005.  (A.R. 390.)  In September, Plaintiff underwent a screening for fibromyalgia and tested positive for twelve out of sixteen tenderness points.

In October 2009, an x-ray of Plaintiff's spine revealed severe disc degeneration at L5-S1, mild kyphosis of the dosrolumbar spine with anterior osteophytes.  (A.R. 690.) Plaintiff was seen by Dr. Marc Linson, an orthopedic surgeon, in February 2010.  An MRI taken on March 2, 2010, revealed further abnormalities in Plaintiff's spine.  On the

basis of these results, Dr. Linson discussed non-surgical
treatment options with Plaintiff as well as the possibility
of further spinal surgery.  (A.R. 680.)  Dr. Linson found
that Plaintiff's back pain was "unresponsive to long
conservative care."  (A.R. 686.)  He performed surgery on
March 24, 2010, including anterior disc excision,
decompression, and fusion.  The post-operative diagnosis was
disc herniation, disc degeneration, annular tear, and disc
resorption at L4-S1.  (A.R. 684.)

In addition to back pain, Plaintiff has received
sporadic treatment for osteoarthritis in her left hand.  In
December 2008, Plaintiff complained of hand pain to her
primary care physician, Dr. Subha Clarke.  Dr. Clarke found
that Plaintiff's symptoms were suggestive of osteoarthritis.
(A.R. 590.)  An x-ray taken of Plaintiff's hand in September
2009 was unremarkable.  (A.R. 662.)  On October 8, 2009,
Plaintiff visited Dr. Antonio Valentin, an arthritis
specialist, who concluded that her hands showed some mild
hypertrophy bilaterally that was consistent with
osteoarthritis.  (A.R. 674.)

Plaintiff also suffers from obesity.  As of March 24,

2009, she was five feet four inches tall and weighed 243 pounds, giving her a Body Mass Index ("BMI") of 41.7.[1] (A.R. 644.)

B.   Mental Conditions.

Plaintiff has some history of clinical depression.  In July 2005, her primary care physician, Dr. Clarke, prescribed Plaintiff Trazodone and Lexapro to treat her depression.  (A.R. 582-84.)  In December of that year, Plaintiff reported to Dr. Clarke that her depression was worsening.  (A.R. 577.)  She was next treated for depression in June 2006, when Dr. Clarke doubled her dose of Prozac, indicating that the increased dose would help both her depression and chronic back pain.  (A.R. 564.)  Plaintiff continues to complain of symptoms of depression and to take anti-depression medication.

C.   Evaluations.

On June 24, 2008, Dr. Frank A. Graf, an orthopaedic surgeon, performed an independent medical evaluation of Plaintiff.  (A.R. 614-26.)  Dr. Graf concluded that

---

[1] The ALJ miscalculated Plaintiff's BMI to be 35.77. Any BMI over 30 falls within the obesity category.

Plaintiff has ongoing restrictions in bending, stooping, lifting, standing, and sitting caused by her back pain.  He also found that Plaintiff's chronic pain diminished her capacity to maintain pace and concentration.  Dr. Graf concluded that Plaintiff's restrictions were ongoing and permanent and rendered her unable to work.  (A.R. 622.)

On July 7, 2008, William H. Burke performed a vocational evaluation.  (A.R. 666-73.)  He found that Plaintiff was alert, oriented, and cooperative, but that she displayed signs of pain and discomfort.  (A.R. 669.)  He noted that Plaintiff could walk and stand for twenty minutes and sit for twenty to thirty minutes.  He concluded that Plaintiff was not capable of employment because of her chronic back pain and physical limitations.  (A.R. 672.)  Dr. Burke further concluded that, considering the length of time that Plaintiff has suffered from pain, it was unlikely that her physical capacities would improve and she could "be considered to have lost all future access to the labor market."  (Id.)

On December 2, 2010, Dr. Linson completed a medical source statement.  (A.R. 706-11.)  He found that Plaintiff

could occasionally lift up to ten pounds; sit for one hour at a time and up to three hours in an eight-hour day; and stand or walk for twenty minutes at a time and up to one hour in an eight-hour day.  (A.R. 706-07.)  She could only occasionally push/pull with her bilateral hands and should avoid operation of foot controls.  (A.R. 708.)  Dr. Linson further found that Plaintiff could only occasionally climb stairs and ramps and operate a motor vehicle, occasionally be exposed to extreme heat and cold, and should never be exposed to vibrations.  (A.R. 709-10.)  Dr. Linson found that Plaintiff would be limited to an office with only moderate noise, could not walk a block at a reasonable pace on rough, uneven terrain, could shop in a limited manner, travel without a companion, ambulate without support, use public transportation, climb stairs at a reasonable pace, and sort and handle paper files.  (A.R. 710-11.)  Dr. Linson found that Plaintiff's physical limitations became permanent as of June 1, 2010.  (A.R. 708-11.)

On June 4, 2009, Dr. S. Ram. Upadhyay, a state agency medical consultant, completed a physical assessment and indicated that Plaintiff was limited to light work with

occasional climbing of ladders, ropes, or scaffolding and
stooping.  (A.R. 632-39.)  On November 6, 2009, medical
consultant Shankar Narayan agreed with Dr. Upadhyay's
assessment.  (A.R. 676.)

D.   ALJ's Findings.

At Step One of the disability adjudicative process, the
ALJ found that Plaintiff had not engaged in substantial
gainful activity since December 28, 2004, the alleged onset
date of her disability.  (A.R. 17.)  At Step Two, the ALJ
found that Plaintiff's fibromyalgia, lumbar disc herniation,
and lumbosacral radiculitis were severe impairments.  The
ALJ found that Plaintiff's osteoarthritis, depression, and
obesity were not severe impairments.  (A.R. 17-19.)  At Step
Three, the ALJ determined that Plaintiff's impairments did
not meet or medically equal any listed impairments.  (A.R.
19.)  The ALJ found that Plaintiff had the residual
functional capacity ("RFC") to perform sedentary work,
except:

> she would be limited to occasional climbing ramps
> and stairs; balancing; stooping; kneeling;
> crouching; or crawling.  She would need to avoid
> climbing ladders, ropes, and scaffolding.  She
> would need to avoid exposure to extreme
> temperature changes and vibration.

8

(A.R. 19-20.)  Based on this RFC, at Step Four, the ALJ
determined that Plaintiff was capable of performing her past
relevant work as an inside sales worker, accounting
occupation, bank manager, loan officer, and secretary.
(A.R. 26-27.)  The ALJ concluded that Plaintiff was not
disabled.  (A.R. 27.)

### III.  DISCUSSION

Plaintiff argues that the ALJ's RFC assessment was not
supported by substantial evidence because (1) the ALJ
improperly gave little weight to the opinions of Plaintiff's
treating and consultative physicians; (2) the ALJ improperly
found that Plaintiff's osteoarthritis, depression, and
obesity were not severe impairments; (3) the ALJ did not
properly assess whether Plaintiff's impairments met or
equaled any listed impairments; and (4) the ALJ made factual
and logical errors when assessing Plaintiff's credibility.

The court is persuaded that the ALJ did not give proper
weight to Plaintiff's treating and consultative physicians
and will remand to the ALJ for reconsideration.  Plaintiff's
remaining arguments lack merit.

### A.   Standard of Review.

Judicial review of a final decision of the Commissioner
is limited to (1) whether substantial evidence supports the
Commissioner's decision, and (2) whether the Commissioner
applied the correct legal standards.  Seavey v. Barnhart,
276 F.3d 1, 9 (1st Cir. 2001).  The responsibility for
weighing conflicting evidence and resolving issues of
credibility belongs to the Commissioner and his designee,
the ALJ.  See id. at 10.  The Commissioner's findings "as to
any fact, if supported by substantial evidence, shall be
conclusive."  42 U.S.C. § 405(g).  Substantial evidence is
such evidence "as a reasonable mind might accept as adequate
to support a conclusion."  Richardson v. Perales, 402 U.S.
389, 401 (1971).  Accordingly, the court must affirm the
Commissioner's findings "if a reasonable mind, reviewing the
evidence in the record as a whole, could accept it as
adequate to support his conclusion."  Rodriguez v. Sec'y of
Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).
This is true "even if the record arguably could justify a
different conclusion."  Rodriguez Pagan v. Sec'y of Health &
Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

B.    Treating and Consultative Physicians.

Plaintiff first argues that the ALJ erred by not giving controlling weight to the opinions of Plaintiff's treating and consultative physicians.  Specifically, Plaintiff argues that the ALJ should have given greater weight to the opinions of Dr. Graf, Dr. Burke, and Dr. Linson.

The ALJ is generally required to give more weight to the opinions of treating physicians than to other medical opinions.  20 C.F.R. § 494.1527(d)(2).  The ALJ should give controlling weight to treating physicians' opinions if the opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence" in the record.  Id.

Of these three physicians, only Dr. Linson, who performed Plaintiff's second back surgery, could be classified as a treating physician and, thus, only his opinion is potentially entitled to controlling weight.  The remaining two physicians only completed consultative evaluations.  Their opinions, while not entitled to controlling weight, must nevertheless be taken into consideration in evaluating disability and given the weight

11

that is appropriate in light of other evidence in the record.

Both Dr. Graf and Dr. Burke concluded that Plaintiff was unable to work, even in a sedentary job, and Dr. Linson found that Plaintiff's back pain imposed limitations that were more severe than those found by the ALJ.  However, in determining Plaintiff's RFC, the ALJ gave little weight to these physicians' evaluations, finding that their opinions were not supported by other evidence in the record.

The ALJ noted that she assigned "some weight" to the opinion of Dr. Graf, but found that Dr. Graf's "findings during examination did not corroborate with the limitations that he set forth."  (A.R. 25.)  The ALJ concluded that "Dr. Graf's opinion that the claimant is unemployable is contradictory to the vocational opinion and to the claimant's physical residual functional capacity."  (Id.)

The ALJ assigned "little weight" to the opinion of Dr. Burke because, according to the ALJ, Dr. Burke "did not perform a full analysis of [Plaintiff's] full vocational abilities."  (A.R. 26.)  The ALJ determined that Dr. Burke's conclusion that Plaintiff was unemployable was based

12

entirely on Dr. Graf's earlier evaluation.  (<u>Id.</u>)

Finally, the ALJ assigned only "some weight" to the opinion of Dr. Linson because she found that Dr. Linson did not conduct a physical examination of Plaintiff's limitations and relied only on Plaintiff's subjective complaints.  The ALJ further determined that Dr. Linson's "extreme limitations are not supported by the objective record on evidence."  (A.R. 26.)

Some evidence in the record suggests that Plaintiff's back disorders did not impose sufficiently severe limitations to render her disabled, as determined by the three treating and consultative physicians.  For example, the ALJ noted that medical records show Plaintiff was improving considerably with therapy and over-the-counter medication, Plaintiff made only infrequent trips to the doctor for her back pain, and Plaintiff gave inconsistent statements regarding her ability to drive, perform household chores, and engage in other everyday activities.  (A.R. 20-26.)

However, Plaintiff's two back surgeries, long history of chronic back pain, and the fact that all three physicians

13

who evaluated Plaintiff's limitations concluded that she was unable to work even in a sedentary job present substantial evidence that Plaintiff was disabled.  The court finds that there is a strong possibility that the ALJ did not give proper consideration and weight to the opinions of Dr. Graf, Dr. Burke, and Dr. Linson regarding Plaintiff's back disorders.  At the very least, the ALJ has not adequately explained why she found those opinions to be inconsistent with other substantial evidence.  The court will remand the case to the ALJ for further consideration.

C.   <u>Remaining Arguments</u>.

Plaintiff's remaining arguments -- including that the ALJ improperly found that Plaintiff's osteoarthritis, depression, and obesity were not severe impairments, that the ALJ did not properly assess whether Plaintiff's impairments met or equaled any listed impairments, and that the ALJ made factual and logical errors when assessing Plaintiff's credibility -- are unconvincing.

There is substantial evidence to support the ALJ's findings that Plaintiff's osteoarthritis, depression, and obesity were not severe impairments.  Plaintiff's symptoms

14

of osteoarthritis did not last for twelve consecutive months, as required for a severe impairment.  There is no evidence that Plaintiff's obesity further limited her physical or mental capacities.[2]  Plaintiff's depression was responding well to medication and there is no evidence of additional limitations stemming from the depression.

The record also supports the ALJ's finding that Plaintiff's impairments did not meet or equal a listed impairment.  There is no evidence in the record of a nerve root compression, which is required under Listing 1.04 ("Disorders of the Spine").  Furthermore, contrary to Plaintiff's suggestion, it was not necessary for the ALJ to explicitly consider whether Plaintiff's impairments equaled Listing 1.02 ("Major Dysfunction of Joint(s)") as there is no evidence in the record of ongoing joint-related impairments.

Finally, the ALJ's determination regarding Plaintiff's credibility is supported by substantial evidence.  <u>See Frustaglia v. Sec'y of Health & Human Servs.</u>, 829 F.2d 192,

---

[2] The ALJ's miscalculation of Plaintiff's BMI does not affect her determination because both the actual and miscalculated BMI score would place Plaintiff in the obese category.

195 (1st Cir. 1987) ("The credibility determination by the
ALJ . . . is entitled to deference, especially when
supported by specific findings.").  The ALJ noted several
discrepancies between Plaintiff's own statements and between
Plaintiff's statements and the objective medical record
which support the ALJ's determination.  For example,
Plaintiff made inconsistent statements during the hearing
and in the documentary evidence regarding her ability to
operate a motor vehicle.  (A.R. 24.)

Plaintiff also argues that the ALJ improperly concluded
that "the fact that the claimant is using over the counter
medication, and not prescribed medication, suggests the
symptoms are not particularly serious," arguing that
Plaintiff did in fact take prescription medication.  (A.R.
23.)  However, as the ALJ noted, Plaintiff testified at the
hearing that she took only Tylenol for her back pain because
her prescribed medications made her "fuzzy headed."  (A.R.
84-85.)  Furthermore, the documentary evidence contains
several reports dated from February 7, 2009 through January
11, 2011 in which Plaintiff stated that she used Ibuprofen
to treat her pain and that she rarely took her medication.

(A.R. 23.)  In light of these statements, the ALJ's determination regarding Plaintiff's credibility was supported by substantial evidence.

### IV. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Motion To Remand (Dkt. No. 11) is hereby ALLOWED, and Defendant's Motion for Order Affirming the Decision of the Commissioner (Dkt. No. 13) is hereby DENIED.

It is So Ordered.

<u>/s/ Michael A. Ponsor</u>
MICHAEL A. PONSOR
U.S. District Judge